## Case No. 4,923.

FORBES et al. v. BARSTOW STOVE CO.

[2 Cliff. 379.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1864.

[1] Reported by William Henry Clifford, Esq., and here reprinted by permission.]

T. A. Jenckes, for complainants.

W. Hayes and B. T. Eames, for respondents.

CLIFFORD, Circuit Justice. The evidence disclosed in the record does not show that the patent on which the suit was founded ever was surrendered and reissued after the bill of complaint was filed in the case. On the contrary, the proofs are full to the point that the application for surrender and reissue, bearing date on the 13th of November, 1862, never was carried into full effect, but that the application was duly cancelled, and the papers relating to the same were accordingly returned to the applicants. The application for surrender and reissue was unquestionably made by the patentees at the time alleged in the motion; and it is also fully proved that the application was favorably received by the proper officers of the bureau, but it is equally clear that the proceedings were never entirely completed. Authority is given to the commissioner, upon the surrender to him of a patent, by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had or shall have a right to claim as new, to cause a new patent to be issued to the inventor, if the error arose by inadvertence or mistake, and without any fraudulent or deceptive intention. [Act July 4, 1836]; 5 Stat. 122.

The surrender is, undoubtedly, as is contended by the respondents, the act of the party making the application; but it is a mistake to suppose that the application may not be withdrawn, under leave of the commissioner, for good cause shown, at any time before the proceedings are fully completed and duly recorded. The reissued letters-patent, as a general rule, have the effect to supersede the original patent, but a pending application for that purpose cannot receive any such construction, no matter how nearly the proceedings may have approached to a consummation, so long as they are not finally completed. Prior to the issuing of the new patent, what is called a surrender in the case, is in general nothing more than a preliminary offer to that effect, as the necessary means of obtaining a reissue; and even when not so intended in the outset, it may be subsequently so treated by the commissioner, at the request of the party applying for the reissue. Where bad faith is shown as an element of the case, a different conclusion would doubtless follow; but the withdrawal of the application may be allowed by the commissioner for any reasonable cause, where there is no fraud practised to procure it, and where there is no prejudicial interference with the rights of third persons. Nothing of the kind appears in this case; but the proofs are full and satisfactory that the application was withdrawn and the surrender cancelled, and the money paid as duty, refunded, for good and sufficient reasons, and with the knowledge and consent of the commissioner. The result is, that the motion to dismiss must be overruled.

The record shows that the complainants introduced the reissued letters-patent on which the suit is founded; and the universal rule is, that the letters-patent when in regular form are prima facie evidence that the person therein designated as the inventer was the original and first inventor of what is there described as his invention. The statement of the specification is, that metallic coffins have heretofore been made of shapes corresponding to those which are usually constructed of wood, and the representation is, that in consequence of their great weight, and the difficulty of rendering them air-tight, and other objections, they have not been generally used. The principal purpose of the present invention, it is said, is to obviate those objections. The structure of the coffin, as represented in the specification, is made to conform, as nearly as may be, to that of the human body. The preferred mode of accomplishing this object is by constructing the coffin of two shells, an upper and a lower one, of nearly the same depth, which are joined together in a horizontal line at or near the middle point in the height of the coffin. The intimation is given, however, that the place of juncture may be varied to suit the views of the manufacturer, but it is evident that no very considerable departure from the centre line can be made, without making it necessary to enlarge the the size, and consequently to increase the weight of the structure, which, instead of promoting, would defeat one of the purposes of the inventor, as represented in the specification. The object of the inventor in that behalf is to dispense with all unnecessary weight of metal. His statement is, that the two shells are more or less curvilinear in all their parts, and that they may be made as thin as the running of the metal will allow,

and still leave them sufficient strength to resist any pressure to which they may be subjected.

Granting that to be so, still, unless the two shells are of nearly equal depth, the receptacle must be larger than the corpse, else there will be difficulty either in depositing the body in the lower shell, or in joining the two shells together, as the one or the other contains the greater portion of the depth. Some variation undoubtedly may be made without any departure from the other conditions of the specification, but the better opinion is that the juncture was, as represented, intended to be substantially at or near the middle line of the structure. The claims of the patent are two, and their true construction leads to the same conclusion in regard to the form and structure of the patented invention. (Here the court recited the claims above given.)

The upper as well as lower shell constitutes a portion of the receptacle, and in that manner the coffin is approximated more nearly to the human body than could otherwise be done, which also shows that the juncture of the two shells must not vary so much from the centre line of the structure as to render it inconvenient to place the corpse in the intended receptacle, or to create the necessity for enlarging the structure.

The complainants having introduced the reissued patent, the burden of proof is upon the respondents to show that the assignor of the complainants was not the original and first inventor of the improvement. Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 380; Battin v. Taggert, 17 How. [58 U. S.] 74. The respondents admit that the burden is upon them, on this branch of the case, and refer to the evidence in the record to overcome the prima facie case of the complainants. They refer to the mummy-cases in evidence, proved to have come from the catacombs of Egypt, and insist that those models, if such they may be called, are of a character to supersede the invention described in the bill of complaint. But it is manifest that the proposition cannot be sustained for several reasons, some of which will be mentioned and briefly explained.

First, the structure is of sycamore wood, and not of cast or raised metal, as described in the complainants' patent.

Secondly, the testimony clearly shows that the ancient structure, although it has two parts, corresponds much more nearly to the ordinary wood coffin of the present day than to the patented invention under consideration. The lower part is obviously the receptacle for the corpse, and the upper part is nothing more than an elaborately carved lid or cover. The depth of the lower part is nine or ten inches, whereas the depth of the upper part, even including the carved or raised work, is at most not more than four inches, and at some points is much less. Although the structure has an upper and a lower part, still it is hardly correct to say that it is formed of two shells, for the reason that the lid or cover is in several parts; and also for the reason already given, that the upper part is much more fitly designated as a carved lid or cover than as a shell, to which it bears little or no resemblance. All of the carved work is upon the upper part, which is made to represent a relief of the human body, and it is quite evident that the unusual depth of the part was designed as the foundation for the carved work which it contains, and not as having any necessary connection with the ordinary purpose of a burial-case beyond that of a lid or cover of usual depth. The burial-case exhibited as a sample of those taken from the catacombs is not only made of wood, and not of metal, but it is not in two parts only, as is the invention of the complainants, but in many parts, and unlike that of the complainants, is pervious to air, and is liable to be affected both by heat and moisture. The characteristics of the invention of the complainants are widely different. They may be stated as follows: First, that the structure is composed of two shells, which, when joined together in the manner described, form a receptacle for the human body; second, that each of the shells encloses a part of the body; third, that the shells are united by a flange and screws, making the seam airtight the whole length; fourth, that the two shells as a whole approximate to the form of the human body, and that the line of their juncture is nearly at the line of the greatest diameter of the body; fifth, that the structure will have sufficient strength to resist any pressure to which it may be subjected, and yet require less weight of metal than metallic coffins heretofore known and used; sixth, that it is perfectly air-tight, and not affected by changes of heat or moisture, and consequently is capable of preserving the human body from decomposition for a long time. Such are the principal characteristics claimed for the invention; and if it be true that they are not all fully realized by it, still it may well be affirmed that, when properly constructed, the invention tends strongly to their accomplishment.

The caveat and application for a patent of A. K. Fahnestock, offered in evidence by the respondents, were not set up in the answer as corresponding inventions to supersede the patent of complainants; but on the 24th of November, 1862, leave was granted by the court to take testimony upon that subject. Doubts are entertained whether the evidence is properly in the case, as no corresponding amendment has been made in the answer; but it is unnecessary to place the decision upon that ground, as it is clear that that evidence, if admissible, is wholly insufficient to establish any such defence, because it shows that the caveator and applicant never made any such invention. He, in fact, made no invention, and what he attempted to make was substan-

tially unlike that of the complainants. What he attempted to make was a cast-iron case without any bottom, to be let down over an ordinary coffin after the latter was deposited in the grave. Stress is laid upon the fact that the caveator said that it might be used for a common coffin; but that expression must be taken in connection with the statement that it was to contain and enclose a common coffin, and to supply the place of a rough coffin, and become a substitute for a brick or stone vault. The applicant himself states in his deposition, that the invention was to take the place of a rough coffin or brick vault, for the preservation of the remains of human bodies; and although there are some statements in the deposition indicating an intention to give the supposed invention a wider range, still it is evident that it cannot in any point of view be regarded as of a character to support this branch of the defence.

A particular examination of the other device introduced by the respondents, as evidence to supersede the patent of the complainants is unnecessary, as it is quite obvious that it cannot have any such effect. The conclusion is, that the assignor of the complainants is the original and first inventor of the improvement described in the reissued patent.

The next issue in the pleadings is that of infringement; and upon that question the burden of proof is upon the complainants. The respondents admit, that they have been and are manufacturing and selling burial-caskets, constructed according to letters-patent granted to Amos C. Barstow, bearing date on the 19th of April, 1859; but they deny that the burial-caskets so manufactured and sold by them constitute any infringement of the reissued patent of the complainants. which is one of the most important questions in the case. The opinion is expressed by experts of skill and experience, that the structure of the respondents is substantially the same manufacture as that described and claimed in the reissued patent on which the suit is founded. The reasons assigned for this opinion are in substance and effect as follows: that the one as much as the other is made of metal; that in both the coffin is composed of two shells, an upper and a lower one, which meet at a longitudinal point; that in the one as well as in the other the respective shells constitute a portion of the receptacle of the body which is or is to be contained partly in one shell and partly in the other. and that in both. the adjacent edges or rims of the respective shells have flanges upon them. which are connected together by screws, so that a tight joint can be made at the seam. They also testify, that in both the structures. the two shells are smaller as they recede from their line of juncture. and that they are rounded at the angles, so as to approximate more or less to the form of the cross-section of the body they are designed to contain, and are

also made smaller at the ends than towards the middle, so as also to approximate more or less to the longitudinal form of the body, and to be of less weight than they would be without such approximation. The witnesses show, undoubtedly, that the coffin particularly described and represented in the reissued patent of the complainants, approximates more nearly to the form of the human body than the structure manufactured and sold by the respondents, but the weight of. the testimony clearly shows that the difference between the two in that behalf is not a substantial one, but only a matter of degree. Where the patentee is the original inventor of that which is described in his patent as his invention, he has the right to treat as infringers all who make and sell substantially the same thing, even though the infringing machine or structure may be an improvement on the one patented. McCormick v. Talcott, 20 How. [61 U. S.] 405. Whenever the defence set up is that respondent has substantially departed from an existing machine or structure, so as to avoid the consequences of an infringement, he must show or it must appear that the departure is such as involves invention, and not mere mechanical skill. There must be mind and inventive genius involved in it, and not the mere skill of the workman. An improvement of the patented invention of another is not in general a sufficient answer to such a charge; and the defence that the article produced is not as good as the patented article is equally untenable and inadmissible, especially if it appear. that it embodies all the peculiarities or characteristics which distinguish the article alleged to be infringed. The article manufactured and sold by the respondents, it is said, is stronger, more spacious, more cumbrous, and more expensive than that produced by the complainants; but the weight of the evidence shows that it embraces all of the principal characteristics claimed in the complainants' patent, and is, therefore, an infringement. The attempt is also made by the respondents to maintain the proposition that the original patent was improperly surrendered, and that the reissued patent on which the suit is founded was procured by the false and fraudulent representations of the present patentees; but the proposition is not supported by the evidence, and therefore cannot be sustained. The prima facie presumption is against the proposition, and of course that presumption must prevail in the absence of any controlling evidence in the case.

The validity of the reissued patent is also assailed upon the ground that the commissioner exceeded his jurisdiction in accepting the surrender and granting the reissue. The suggestions in support of the proposition are, that all of the assignees did not apply for the new patent. and that it appears on the face of the specification and claim that it is not for the same invention as that described in

the original patent. The first suggestion is entitled to no weight, as the whole title, as shown in the pleadings, was in the applicants. Nonjoinder of licensees constitutes no defence for an infringer at this stage of the litigation. The assignees may tender a surrender and apply for a reissue of the patent; and there is nothing in the pleadings in this case to show that there was any irregularity in the proceedings.

The second suggestion is also untenable, because wholly unfounded in law and fact. The reissued patent is for the same invention as that described in the original specification. An extended examination of this proposition is unnecessary, as it appears, upon a comparison of the specifications in question, that the essential parts of the description in each are substantially in the same language.

The remaining objection is that the description of the invention is not set forth in the patent, in such full, clear, and exact terms, as to enable any one skilled in the art to which it appertains, to construct the patented invention. The settled rule of construction in this country is, that the patent and specification are to be construed together in order to ascertain the subject-matter of the invention. Curt. Pat. §§ 121, 155; Whittemore v. Cutter [Case No. 17,600]; Hogg v. Emerson, 6 How. [47 U. S.] 479. The drawings also annexed to a specification, in compliance with the statute, are held to form a part of it, and are in like manner to be regarded in the construction of the whole instrument. Earle v. Sawyer [Case No. 4,247].

The specifications are required for two principal purposes: First, to inform the public what the thing is, of which the patentee claims to be the inventor; and, secondly, to enable the public, after the expiration of the patent, to practise the invention from the specification, as therein described. Whether the patentee has described the subject-matter, or what he claims to have invented, so as to enable the public to know what his claim is, is in general a question of law for the court on the construction of the patent. Curt. Pat. § 130, p. 130.

But whether he has described the invention in such full, clear and exact terms as to enable the public to practise it from the specification, is in general a question of fact to be determined in common-law cases by a jury. The act of congress does not require the patentee to address himself to the uninformed upon the particular subject, but allows him to speak to persons of competent skill in the art; and it only requires him to use such full, clear, and exact terms, as will enable that class of persons to reproduce the thing described, from the description given in the specification. Testing the case by that rule, it is clear that the objection under consideration cannot be sustained, and it is accordingly overruled.

The complainants are entitled to an account.